## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

IN RE:

GULF MEDICAL SERVICES, INC.          CASE NO.: 18-30012-JCO
                                     CHAPTER 11

    Debtor-in-Possession.

_____

## DISCLOSURE STATEMENT
_____

## ARTICLE I

## INTRODUCTION

Debtor-in-Possession, Gulf Medical Services, Inc. ("Debtor") submits this Disclosure Statement pursuant to section 1125 of title 11 of the United States Bankruptcy Code in support of the Debtor's Plan of Reorganization, as it may be amended (the "Plan"). Unless otherwise defined herein, all capitalized terms contained herein have the meanings ascribed to them in the Plan.

The Disclosure Statement sets forth certain information regarding the Debtor, events leading to the Debtor's bankruptcy, significant events that have occurred during the Bankruptcy Case (as hereinafter defined), and the plan for reorganization of the Debtor's business. This Disclosure Statement

1

also describes certain terms and provisions of the Plan, certain effects of confirmation of the Plan, certain risk factors associated with the Plan, and the manner in which distributions will be made under the Plan. Additionally, this Disclosure Statement discusses the confirmation process, the voting procedures and the requirements for voting on the Plan, as well as the conditions to effectiveness of the Plan, distribution under the Plan and the effect of confirmation.

A.    Filing of the Debtor's Bankruptcy Case.

On January 5, 2018, the Debtor filed a voluntary chapter 11 petition in the United States Bankruptcy Court for the Northern District of Florida, Pensacola Division (the "Bankruptcy Court"), (the `Bankruptcy Case"). Purpose of Disclosure Statement.

This Disclosure Statement is submitted in accordance with section 1125 of the Bankruptcy Code for the purpose of soliciting acceptances of the Plan from holders of certain Classes of Claims. Acceptances of the Plan are only being sought from holders of Claims that are "impaired" (as that term is defined in section 1124 of the Bankruptcy Code) by the Plan and who are receiving or retaining property under the Plan. Holders of Claims that are not impaired are deemed to have accepted the Plan.

2

The Debtor has prepared this Disclosure Statement pursuant to section 1125 of the Bankruptcy Code, which requires that a copy of the Plan, or a summary thereof, be submitted to all Holders of Claims against the Debtor, along with a written disclosure statement containing adequate information about the Debtor of a kind, and in sufficient detail, as far as is reasonably practical, that would enable a hypothetical, reasonable investor typical of the holders of Claims to make an informed judgment in exercising their right to vote on the Plan.

This Disclosure Statement was approved by the Bankruptcy Court on _____. Such approval is required by the Bankruptcy Code, and does not constitute a judgment by the Bankruptcy Court as to the desirability of the Plan or the value or suitability of any consideration offered under the Plan. Such approval does indicate, however, that the Bankruptcy Court has determined that the Disclosure Statement meets the requirements of section 1125 of the Bankruptcy Code and contains adequate information to permit the Holders of Claims whose acceptance of the Plan is solicited to make an informed judgment regarding acceptance or rejection of the Plan.

APPROVAL BY THE BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN

3

ENDORSEMENT BY THE BANKRUPTCY COURT OF THE PLAN OR A GUARANTEE OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN. THE MATERIAL CONTAINED IN THIS DISCLOSURE STATEMENT IS INTENDED SOLELY FOR THE USE OF HOLDERS OF CLAIMS AND EQUITY INTERESTS IN EVALUATING THE PLAN AND VOTING TO ACCEPT OR REJECT THE PLAN AND, ACCORDINGLY, MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN THE DETERMINATION OF HOW TO VOTE ON, OR WHETHER TO OBJECT TO, THE PLAN. THE DEBTOR BELIEVES THAT THE PLAN AND THE PROPOSED TREATMENTS OF CLAIMS IS IN THE BEST INTERESTS OF HOLDERS OF CLAIMS, AND THEREFORE URGES YOU TO VOTE TO ACCEPT THE PLAN.

NEITHER THE FILING OF THE PLAN NOR ANY STATEMENT OR PROVISION CONTAINED IN THE PLAN OR IN THE DISCLOSURE STATEMENT, NOR THE TAKING BY ANY PARTY IN INTEREST OF ANY

ACTION WITH RESPECT TO THE PLAN, SHALL (i) BE
OR DEEMED TO BE AN ADMISSION AGAINST
INTEREST, AND (ii) UNTIL THE EFFECTIVE DATE, BE
OR BE DEEMED TO BE A WAIVER OF ANY RIGHTS
ANY PARTY IN INTEREST MAY HAVE (a) AGAINST
ANY OTHER PARTY IN INTEREST OR (b) IN ANY OF
THE ASSETS OF ANY OTHER PARTY IN INTEREST,
AND, UNTIL THE EFFECTIVE DATE, ALL SUCH
RIGHTS ARE SPECIFICALLY RESERVED. IN THE
EVENT THAT THE PLAN IS NOT CONFIRMED OR
FAILS TO BECOME EFFECTIVE, NEITHER THE PLAN
NOR THE DISCLOSURE STATEMENT, NOR ANY
STATEMENT CONTAINED IN THE PLAN OR THE
DISCLOSURE STATEMENT, MAY BE USED OR RELIED
ON IN ANY MANNER IN ANY SUIT, ACTION,
PROCEEDING OR CONTROVERSY, WITHIN OR
WITHOUT THE DEBTOR'S BANKRUPTCY CASE,
INVOLVING THE DEBTOR, EXCEPT WITH RESPECT
TO CONFIRMATION OF THE PLAN.

C.     Hearing on Confirmation of the Plan.

The Bankruptcy Court has set _____ as the time and date for the hearing (the "Confirmation Hearing") to determine whether the Plan has been accepted by the requisite number of Holders of Claims and whether the other requirements for confirmation of the Plan have been satisfied. Holders of Claims may vote on the Plan by completing and delivering the enclosed ballot to J. Steven Ford, at Wilson, Harrell, Farrington, Ford, Wilson, Spain, & Parsons, P.A., at 307 S. Palafox Street, Pensacola, Florida 32502 on or before 5:00 p.m._____. If the Plan is rejected by one or more Impaired Classes of Claims, the Bankruptcy Court may still confirm the Plan, or a modification thereof, under section 1129(b) of the Bankruptcy Code (commonly referred to as a "cramdown") if it determines, among other things, that the Plan does not discriminate unfairly and is fair and equitable with respect to the rejecting Class or Classes of Claims. The procedures and requirements for voting on the Plan are described in more detail below.

D.     Sources of Information.

Except as otherwise expressly indicated, the portions of this Disclosure Statement describing the Debtor, its business, and properties and management have been prepared from information furnished by the Debtor

6

or from public filings made by the Debtor or its creditors.

Certain of the materials contained in this Disclosure Statement are taken directly from other readily accessible documents or are digests of other documents. While the Debtor has made every effort to retain the meaning of such other documents or portions that have been summarized, it urges that any reliance on the contents of such other documents should depend on a thorough review of the documents themselves. In the event of a discrepancy between this Disclosure Statement and the actual terms of a document, the actual terms of the document shall govern and apply.

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified, and neither the delivery of this Disclosure Statement nor any exchange of rights made in connection with it shall, under any circumstances, create an implication that there has been no change in the facts set forth herein since the date of this Disclosure Statement.

No statements concerning the Debtor, the value of its property, or the value of any benefit offered to the holder of a Claim under the Plan should be relied on other than as set forth in this Disclosure Statement. In arriving at a decision, parties should not rely on any representation or inducement

made to secure their acceptance or rejection that is contrary to information contained in this Disclosure Statement, and any such additional representations or inducements should be immediately reported to counsel for the Debtor, J. Steven Ford, at Wilson, Harrell, Farrington, Ford, Wilson Spain & Parsons, P.A., 307 S. Palafox Street, Pensacola, FL 32502.

## ARTICLE II

## EXPLANATION OF CHAPTER 11

A.     Overview of Chapter 11.

The commencement of a chapter 11 case creates an estate comprised of all of a Debtor's legal and equitable interests in property as of the date the petition is filed. In a chapter 11 case where the Debtors are individuals, certain assets may be exempt under the provisions of section 522 of the Bankruptcy Code and applicable state law. Exempt assets are not required to be dedicated to the Plan for repayment to creditors.  Unless the Bankruptcy Court orders the appointment of a trustee, sections 1101, 1107, and 1108 of the Bankruptcy Code provide that a chapter 11 Debtor may continue to operate its business and control its assets as "Debtor-in-possession."

The filing of a chapter 11 petition also triggers the automatic stay under section 362 of the Bankruptcy Code. The automatic stay is an injunction that

halts essentially all attempts to collect pre-petition claims from a Debtor or to otherwise interfere with a Debtor's business or its property.  Formulation of a plan of reorganization is the principal purpose of a chapter 11 case. The plan sets forth the means for satisfying the claims of creditors against the Debtor.

B.      Plan of Reorganization.

After a plan has been filed, the holders of Claims against a Debtor generally are permitted to vote on whether to accept or reject the plan. Chapter 11 does not require that each holder of a Claim against a Debtor vote in favor of a plan in order for the plan to be confirmed. At a minimum, however, a majority in number and two-thirds in amount of those Claims actually voting from at least one class of Claims impaired under the plan must vote to accept the plan.

Classes of Claims that are not "impaired" under a plan of reorganization are conclusively presumed to have accepted the plan, and are therefore not entitled to vote. A class is "impaired" if the plan modifies the legal, equitable, or contractual rights attaching to the claims or equity interests of that class. Modification for purposes of impairment does not include curing defaults and reinstating maturity or payment in full in cash.

9

Conversely, classes of Claims that receive or retain no property under a plan of reorganization are conclusively presumed to have rejected the plan, and therefore are not entitled to vote.

Even if classes of Claims accept a plan of reorganization, the Bankruptcy Court may nonetheless deny confirmation. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and, among other things, requires that a plan be in the "best interests" of impaired, dissenting creditors and interest holders and that the plan be feasible. The "best interests" test generally requires that the value of the consideration to be distributed to impaired, dissenting creditors and interest holders under a plan may not be less than that which those parties would receive if the Debtor were liquidated under a hypothetical chapter 7 proceeding. A plan must also be determined to be "feasible," which generally requires a finding that there is a reasonable probability that the Debtor will be able to perform the obligations incurred under the plan and that the Debtor will be able to continue operations without the need for further financial reorganization or liquidation.

The Bankruptcy Court may confirm a plan of reorganization even though fewer than all of the classes of impaired claims accept it. The

10

Bankruptcy Court may do so under the "cramdown" provisions of section 1129(b) of the Bankruptcy Code. In order for a plan to be confirmed under the cramdown provisions, despite the rejection of a class of impaired Claims or Interests, the proponent of the plan must show, among other things, that the plan does not discriminate unfairly and that it is fair and equitable with respect to each impaired class of Claims or Equity Interests that has not accepted the plan.

The Bankruptcy Court must further find that the economic terms of a particular plan meet the specific requirements of section 1129(b) of the Bankruptcy Code with respect to any class of Claims that votes to reject the plan. If a plan's proponent seeks confirmation of the plan under the provisions of section 1129(b) of the Bankruptcy Code, the plan must also meet all applicable requirements of section 1129(a) of the Bankruptcy Code (except section 1129(a)(8)). Those requirements include the requirements that (i) the plan comply with applicable Bankruptcy Code provisions and other applicable law; (ii) the plan be proposed in good faith; and (iii) at least one impaired class of creditors or interest holders has voted to accept the plan.

## ARTICLE III

## BACKGROUND OF THE DEBTOR

Gulf Medical Services, Inc. was incorporated on June 12, 1987. The corporation was formed for the purpose for providing medical equipment to its customers as prescribed by the customers' physicians. Over time, the Debtor expanded to four locations along the northern gulf coast of Florida with its principal business location at 3103 North 12th Avenue, Pensacola, Florida. The Debtor also operated locations in Fort Walton Beach, Tallahassee and Panama City Beach. After expanding its business, the Debtor began generating multi-million-dollar sales each year. In 2015, the Debtor's gross revenues were in excess of $12,000,000.00. However, beginning in 2016, Medicare and Medicaid reduced payments on some of the equipment provided by the Debtor resulting in a decrease in total revenues in excess of $2,000,000.00. Additionally, the Debtor, lost one of its contracts resulting in additional revenue losses of approximately $1,200,000.00. Gross revenues in 2016 were approximately $10,000,000.00. Gross revenues in 2017 were slightly under $8,000,000.00. The drastic reduction in income resulted in the Debtor being unable to make payments on its debts after payment of its ongoing operating expenses. The chapter 11 case was filed to allow the Debtor to

restructure its debts adjusted for its then current cash flow through a chapter 11 plan which would be funded through the continued operations of the Debtor.

Because much of the Debtor's debts were personally guaranteed by its principals, Kenneth Steber and Stephen Jernigan, the downturn in income also resulted in Mr. Steber and Mr. Jernigan filing separate chapter 11 cases. On December 18, 2018, the Court entered its Order Administratively consolidating the three Chapter 11 Cases (Doc. 137). Subsequent to the administrative consolidation, the Debtor began preparation of a proposed joint chapter 11 plan of reorganization which would provide for payment of the debt of Gulf Medical, and the guaranteed debt owed by Steber and Jernigan, through the continued operation of the business.

Unfortunately, the Debtor's revenue continued to decline and the Debtor began defaulting on post-petition obligations. By early 2019, the Debtor determined that the best course of action for the benefit of the Debtor, its estate and its creditors would be a sale of the Debtor's assets. On April 3, 2019 the Debtor entered into a contract with AeroCare Holdings, Inc. for a sale of substantially all of the Debtor's assets. An

Order Granting Debtor's Motion to Sell Property Free and Clear of Liens to AeroCare Holdings, Inc. was entered on May 24, 2019 (Doc. 173). The Order was subsequently amended on August 6, 2019 to reflect that the contract had been assigned to Medical Logic Ft. Walton, Inc., a wholly owned subsidiary of AeroCare Holdings, Inc. The Amended Order also excluded from the sale the real property and improvements located at 320 Racetrack Road, Fort Walton Beach, Florida and reduced the sale price to $1,925,000.00, to reflect the exclusion of the real estate.

The Sale of the Debtor's assets closed on August 22, 2019, at which time the sale proceeds of $1,925,000.00 were paid to the Debtor and deposited into Debtor's attorney's trust account. At closing, the sum of $77,511.25 was paid to Regions Bank for the release of the liens on the vehicles which were part of the sales transaction. On October 17, 2019, the Court entered its Order Approving Distribution to Secured Creditors (Doc. 231). On that same date, the Court entered its Order Approving Compromise with Regions Bank (Doc. 230) which authorized the transfer of the 320 Racetrack Road property to Regions Bank in exchange for a credit towards the debt owed to Regions in the amount of $275,000.00. On November 13, 2019, the Court entered its Order Approving Compromise with Philips

14

Medical Capital (Doc. 250), which settled the amount of the secured claim owed to Philips Capital with an agreed upon amount of $150,000.00.

In addition to payment of the above-referenced claims, the Debtor paid attorney fees and costs owed to the Debtor's attorney which were approved pursuant to the Order Approving First Interim Application for Compensation (Doc. 155) and the Order Approving Second Interim Application for Compensation (Doc. 340).

On December 18, 2020, the Court granted the Debtor's Motion for Authority to Make Partial Distributions to Holders of Administrative Claims (Doc. 341) which authorized the Debtor to make partial payments equal to 60% of the allowed amount of each administrative claim previously approved by the Court. Before making the partial distributions, the Debtor calculated the maximum amount which could potentially be owed to the Internal Revenue Service resulting from the sale of the Debtor's assets in August 2019 and withheld that amount. Subsequently, the Debtor's accountant has determined that the tax liability for tax year 2019 will be zero based on various losses the Debtor is able to use to offset the potential gain from the sale.

Accordingly, the Debtor has now filed this Disclosure Statement and

a proposed Plan of Reorganization which proposes to distribute the remaining funds on hand. After the payment of the debts and claims referenced above, and after the payment of U.S. Trustee quarterly fees, the Debtor currently has on hand the sum of $469,813.21.

## ARTICLE IV

## VOTING PROCEDURES AND CONFIRMATION REQUIREMENTS

### A.    Ballots and Voting Deadline.

A ballot for voting to accept or reject the Plan is enclosed with this Disclosure Statement and has been mailed to Holders of Claims (or their authorized representative) entitled to vote. After carefully reviewing the Disclosure Statement, including all exhibits, each Holder of a Claim (or its authorized representative) entitled to vote should indicate its vote on the enclosed ballot. All Holders of Claims (or their authorized representative) entitled to vote must:

- carefully review the ballot and corresponding instructions,

- execute the ballot, and

- forward it to the address indicated on the ballot, by the Voting Deadline for the ballot to be considered.

If you believe you are a holder of a Claim in an impaired Class under

16

the Plan and entitled to vote to accept or reject the Plan, but did not receive

a ballot with these materials, please contact J. Steven Ford, Esquire, Wilson,

Harrell, Farrington, Ford, Wilson, Spain, & Parsons, P.A., Attorneys at Law,

307 S. Palafox Street, Pensacola, FL 32502, Tel (850) 438-1111.

B.    Holders of Claims Entitled to Vote.

Any Holder of Claims against the Debtor whose Claim is impaired

under the Plan is entitled to vote if either (i) the Debtor has scheduled the

Holder's Claim (and such Claim is not scheduled as disputed, contingent, or

unliquidated) or (ii) the holder of the Claim has filed a proof of claim or

interest on or before the deadline set by the Bankruptcy Court for such

filings.  The ballot form that you received does not constitute a proof of

claim. Any Holder of a Claim as to which an objection has been filed is not

entitled to vote, unless the Bankruptcy Court temporarily allows the Claim

in an amount that it deems proper for the purpose of accepting or rejecting

the Plan.  In addition, a vote by a Holder of a Claim may be disregarded if

the Bankruptcy Court determines that such Holder's acceptance or rejection

was not solicited or procured in good faith or in accordance with the

applicable provisions of the Bankruptcy Code or if such ballot was cast in

bad faith.

17

Under section 1126(f) of the Bankruptcy Code, a class that is not impaired under a chapter 11 plan, and each holder of a claim or equity interest in such class, are conclusively presumed to have accepted the chapter 11 plan. Under section 1126(g) of the Bankruptcy Code, a class is deemed not to have accepted a chapter 11 plan if the holders of claims or equity interests in such class do not receive or retain any property under the chapter 11 plan on account of such claims or equity interests. Holders of Claims that are unimpaired under the Plan, or that are not entitled to receive or retain any property under the Plan, are *not* entitled to vote to accept or reject the Plan. The Debtor will not be soliciting votes from such Holders of Claims or Equity Interests.

C.    Bar Date for Filing Proofs of Claim.

The Bankruptcy Court set July 15, 2019 as the deadline for filing proofs of claim in the Bankruptcy Case for all creditors except governmental entities which had until October 9, 2019 to file a claim.  All claims must be filed no later than the established bar date.

D.    Definition of Impairment.

Under section 1124 of the Bankruptcy Code, a Class of Claims is impaired under a plan of reorganization unless, with respect to each Claim

18

of such class, the plan:

    (1)    leaves unaltered the legal, equitable, and contractual rights of the holder of such claim or equity interest; or

    (2)    notwithstanding any contractual provision or applicable law that entitles the holder of a claim or equity interest to receive accelerated payment of such claim or equity interest after the occurrence of a default:

        (a)    cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or a kind that Section 365(b)(2) expressly does not require to be cured;

        (b)    reinstates the maturity of such Claim or Equity Interest as it existed before the default;

        (c)    compensates the holder of such Claim or Equity Interest for damages incurred as a result of reasonable reliance on such contractual provision or applicable law; and

19

(d)   if such claim or such interest arises from any failure to perform a nonmonetary obligation, other than a default arising from a failure to operate a nonresidential real property lease subject to Section 365(b)(1)(A), compensates the holder of such claim or such interest (other than the Debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure; and

(e)   does not otherwise alter the legal, equitable, or contractual rights to which such Claim or Equity Interest entitles the holder of such claim.

## E.   Vote Required for Class Acceptance.

The Bankruptcy Code defines acceptance of a plan by a class of creditors as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of the claims of that class that actually cast ballots for acceptance or rejection of the Plan; that is, acceptance takes place only if creditors holding claims constituting at least two-thirds in amount of the total amount of claims and more than one-half (1/2) in number of the creditors actually voting cast their ballots in favor of acceptance.

F.    Information on Voting and Ballots.

Ballots are being forwarded to all Holders of Claims in accordance with the Bankruptcy Rules. For purposes of voting on the Plan, the amount and classification of a Claim and the procedures that will be used to tabulate acceptances and rejections of the Plan shall be exclusively as follows:

(a)    If no proof of claim has been timely filed, the voted amount of a Claim shall be equal to the amount listed for the particular Claim in the Schedules, as and if amended, to the extent such Claim is not listed as contingent, unliquidated, or disputed, and the Claim shall be placed in the appropriate Class, based on the Debtor' records, and consistent with the Schedules and the Claims registry of the Clerk of the Bankruptcy Court (the "Clerk").

(b)    If a proof of claim has been filed timely and has not been objected to before the expiration of the Voting Deadline, the voted amount of that Claim shall be the amount specified in the proof of claim filed with the Clerk.

(c)    Subject to subparagraph (d) below, a Claim that is the subject of an objection filed before the Voting Deadline shall be disallowed for voting purposes: unless the Debtor agrees to allow it

21

in its discretion.

(d)     If a Claim has been estimated or otherwise allowed for voting purposes by order of the Bankruptcy Court, the voted amount and classification shall be that set by the Bankruptcy Court.

(e)     If a holder of a Claim (or its authorized representative) did not use the Ballot form provided by the Debtor or the Official Ballot Form authorized under the Federal Rules of Bankruptcy Procedure such Ballots may not be counted in the Debtor's discretion.

(f)     If the Ballot is not received by the Debtor's attorney on or before the Voting Deadline at the place indicated on the Ballot or otherwise in the Solicitation Materials, the Ballot may not be counted in the Debtor's discretion.

(g)     If the Ballot is not signed by the holder of the Claim (or its authorized representative), the Ballot may not be counted in the Debtor's discretion.

(h)     Whenever a holder of a Claim (or its authorized representative) submits more than one Ballot voting the same Claim(s) before the Voting Deadline, except as otherwise directed by the Bankruptcy Court after notice and a hearing, the last such Ballot

22

shall be deemed to reflect the voter's intent and shall supersede any prior Ballots unless the Debtor in their discretion otherwise determine.

G.    Execution of Ballots by Representatives.

If a Ballot is signed by trustees, executors, administrators, guardians, attorneys-in-fact, officers of corporations, or others acting in a fiduciary or representative capacity, such Persons must indicate their capacity when signing and, at the Debtor's request, must submit proper evidence of their authority to so act. In the event that the Debtor believes that an issue exists with respect to authority of a party to execute a Ballot, the Debtor shall file a motion and request that the Bankruptcy Court determine such party's authority to execute the Ballot.

H.    Confirmation of Plan.

1.    Solicitation of Acceptances.

THE DEBTOR IS REQUESTING THAT YOU VOTE TO ACCEPT THE PLAN.

**NO REPRESENTATIONS OR ASSURANCES, IF ANY, CONCERNING THE DEBTOR OR THE PLAN IS AUTHORIZED BY THE DEBTOR, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR**

**INDUCEMENTS MADE BY ANY PERSON TO SECURE YOUR VOTE, OTHER THAN THOSE CONTAINED IN THIS DISCLOSURE STATEMENT, SHOULD NOT BE RELIED ON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS OR INDUCEMENTS SHOULD BE REPORTED TO DEBTOR' COUNSEL FOR APPROPRIATE ACTION.**

**THIS IS A SOLICITATION SOLELY BY THE DEBTOR, AND IS NOT A SOLICITATION BY ANY ATTORNEY, ACCOUNTANT, OR OTHER PROFESSIONAL FOR THE DEBTOR. THE REPRESENTATIONS, IF ANY, MADE IN THIS DISCLOSURE STATEMENT ARE THOSE OF THE DEBTOR AND NOT OF SUCH ATTORNEYS, ACCOUNTANTS, OR OTHER PROFESSIONALS, EXCEPT AS MAY BE OTHERWISE SPECIFICALLY AND EXPRESSLY INDICATED.**

Under the Bankruptcy Code, a vote for acceptance or rejection of a plan may not be solicited unless the claimant has received a copy of a disclosure statement approved by the Bankruptcy Court prior to, or concurrently with, such solicitation. This solicitation of votes on the Plan is governed by section 1125(b) of the Bankruptcy Code. Violation of section 1125(b) of the

Bankruptcy Code may result in sanctions by the Bankruptcy Court, including disallowance of any improperly solicited vote.

    2.    <u>Requirements for Confirmation of the Plan.</u>

At the Confirmation Hearing, the Bankruptcy Court shall determine whether the requirements of section 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court shall enter an Order confirming the Plan. For the Plan to be confirmed, section 1129 of the Bankruptcy Code requires that:

(a)    The Plan and the Debtor comply with the applicable provisions of the Bankruptcy Code;

(b)    The Debtor is proposing the Plan in good faith and not by any means forbidden by law;

(c)    Any payment or distribution made or promised by the Debtor under the Plan for services or for costs and expenses in connection with the Plan has been disclosed to the Bankruptcy Court, and any such payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable;

(d)    The Debtor has disclosed the identity and affiliations of any

individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a joint plan with the Debtor, or a successor to the Debtor under the plan; and the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and the Debtor has disclosed the identity of any insider that will be employed or retained by the reorganized Debtor, and the nature of any compensation for such insider.

(e)     With respect to each impaired Class of Claims or Equity Interests, either each holder of a Claim or Equity Interest of the Class has accepted the Plan, or will receive or retain under the Plan on account of that Claim or Equity Interest, property of a value, as of the effective date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated on such date under chapter 7 of the Bankruptcy Code. If section 1111(b)(2) of the Bankruptcy Code applies to the Claims of a Class, each holder of a Claim of that Class will receive or retain under the Plan on account of that Claim property of a value, as of the Effective Date, that is not less than the value of that holder's interest in the Debtor's interest in the property that secures that claim;

(f)     Each Class of Claims or Equity Interests has either accepted the Plan or is not impaired under the Plan;

(g)     Except to the extent that the holder of a particular Administrative Claim or Priority Unsecured Claim has agreed to a different treatment of its Claim, the Plan provides that Administrative Claims and Allowed Priority Unsecured Claims shall be paid in full on the Effective Date or the date such Claim becomes an Allowed Claim;

(h)     With respect to allowed unsecured claims of governmental units, the holder of such claim will receive on account of such claim, regular installment payments in cash (i) of a total value, as of the effective date of the plan equal to the allowed amount of such claim, (ii) over a period ending not later than 5 years after the date of the order for relief under Section 301, 302 or 303, and (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under Section (b);

(i)     With respect to a secured claim which would otherwise meet the description of an unsecured claim of a governmental unit under Section 507(a)(8), but for the secured status of that claim, the holder of that claim will receive on account of that claim, cash payments in the same mariner

27

and over the same period as described in paragraph (h) above;

(j)     If a Class of Claims or Equity Interests is impaired under the Plan, at least one such Class of Claims or Equity Interests has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim or Equity Interest of that Class; and

(k)     Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

The Debtor believes that the Plan satisfies all of the statutory requirements of the Bankruptcy Code for confirmation and that the Plan was proposed in good faith. The Debtor believes it has complied, or will have complied, with all the requirements of the Bankruptcy Code governing confirmation of the Plan.

3.     Acceptances Necessary to Confirm the Plan.

Voting on the Plan by each Holder of a Claim (or its authorized representative) is important. Chapter 11 of the Bankruptcy Code does not require that each holder of a Claim vote in favor of the Plan in order for the Court to confirm the Plan. Generally, to be confirmed under the acceptance

provisions of section 1126(a) of the Bankruptcy Code, the Plan must be accepted by each Class of Claims that is impaired under the Plan by parties holding at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims of such Class actually voting in connection with the Plan. Even if all Classes of Claims accept the Plan, the Bankruptcy Court may refuse to confirm the Plan.

4.    Cramdown.

In the event that any impaired Class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtor if, as to each impaired Class that has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable." A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class receives more than it is legally entitled to receive for its claims or equity interest. "Fair and equitable" has different meanings for holders of secured and unsecured claims and equity interests.

With respect to a secured claim, "fair and equitable" means either (a) the impaired secured creditor retains its liens to the extent of its Allowed Claim and receives deferred cash payments at least equal to the Allowed amount of its Claims with a present value as of the Effective Date of the Plan

29

at least equal to the value of such creditor's interest in the property securing its liens; (b) property subject to the lien of the impaired secured creditor is sold free and clear of that lien, with that lien attaching to the proceeds of sale, and such lien proceeds must be treated in accordance with clauses (a) and (c) hereof; or (c) the impaired secured creditor realizes the "indubitable equivalent" of its claim under the Plan.

With respect to an unsecured claim, "fair and equitable" means either (a) each impaired creditor receives or retains property of a value equal to the amount of its Allowed Claim or (b) the holders of Claims that are junior to the Claims of the dissenting class will not receive any property under the plan.

## ARTICLE V

## EVENTS DURING THE CHAPTER 11 BANKRUPTCY CASE

A.   Filing of the Chapter 11 Petition.

The Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition") on January 5, 2018 (the "Petition Date") in the United States Bankruptcy Court for the Northern District of Florida, Pensacola Division. The Debtor filed its Disclosure Statement and Plan of Reorganization on _____.

B.     Retention of Professionals by the Debtor.

The Debtor filed an application to employ J. Steven Ford, Esquire at

Wilson, Harrell, Farrington, Ford, Wilson, Spain, & Parsons, P.A. as counsel

for the Debtor. On February 20, 2018, the Court entered its Order Granting

Application to Employ Debtor's Attorney [Doc. 46]. On August 27, 2020 the

Court entering its Order Granting Application to Employ Accountants, Durst

& Jordan, as Debtor's Accountants (Doc. 318).

C.     Statements and Schedules.

On January 5, 2018, the Debtor filed it Statements and Schedules

[Doc. 1].   The Statements and Schedules may be amended from time to

time, if needed.

## ARTICLE VI

### DESCRIPTION OF THE PLAN OF REORGANIZATION

The Debtor ceased operating its business on August 21, 2019 upon

the sale of its assets to Medical Logic Ft. Walton, Inc. After the payment

of various claims approved by the Court, the Debtor is currently holding

the sum of $469,813.21 in proceeds from the sale which will be distributed

pursuant to the Plan, subject to any change as a result of payments

approved by the Court prior to the confirmation of the Plan. Specifically,

the Plan proposes that these funds will be distributed in the order of priority provided for in Section 507(a) of the Bankrutpcy Code.

## ARTICLE VII

## MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN

A.    General Means of Implementation.

The Debtor proposes to pay creditors from the proceeds from the sale of its assets.

B.    Means and Implementation.

On August 21, 2019, the Debtor ceased operating as an ongoing business. On that date, pursuant to Court Order, the Debtor sold substantially all of its assets and received, in exchange, the sum of $1,925,000.00. After the payment of allowed secured claims, as approved by the Court, and U.S. Trustee fees and attorney fees approved by the Court and a partial payment to administrative claimants, the Debtor is currently holding the sum of $469,813.21 which will be distributed to creditors pursuant to a confirmed Plan. This amount is subject to change as a result of the payment of U.S. Trustee quarterly fees and any other payments approved by the Courts prior to confirmation of the Plan.

C.    Objections to Claims

The Debtor may object to any claim filed with the Bankruptcy Court and may object to and contest the allowance of any such claims. Within 21 days after service of the objection, written responses must be filed with the Bankruptcy Court by the holder of the claim. Failure to file a written response shall constitute a waiver and release of the claim.

D. Disputed Claims

No distribution shall be made on any disputed claim until such time as the claim is resolved by agreement of the parties or by an order of the Bankruptcy Court.

1. Generally.

All distributions required under the Plan to Holders of Allowed Claims shall be made on or after the Effective Date, as provided herein.

2. Distributions of Cash.

Any payment of Cash made by the Debtor pursuant to the Plan shall be made by check drawn on a domestic bank, or at the option of Debtor, by wire transfer from a domestic bank.

3. Timing of Distributions.

Any payment of distribution required to be made under the plan on a day other than a business day shall be due on the next succeeding business

33

day.

4.     Delivery of Distributions.

Subject to Bankruptcy Rule 9010, distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Schedules filed by the Debtor with the Bankruptcy Court, unless superseded by the address as set forth on proofs of claim filed by such holders or other writing notifying the Debtor of a change of address (or at the last known address of such a holder if no proof of claim is filed or if the Debtor has not been notified in writing of a change of address).

C.     Procedure for Resolving Disputed Claims.

1.     Right to Object to Claims.

The Debtor has the right to object to any Claim filed with the Bankruptcy Court, and shall have the right to join in any objection filed by any other party in interest relating to the allowance of any such Claim.

2.     Deadline for Objecting to Claims.

As soon as practicable, objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made. The objection shall notify the Holder of the Claim of the deadline for responding to such objection provided for in the

34

Plan. Objections shall be made on a negative notice basis, meaning that the Debtor's objections will be sustained without the need for a hearing if no response is filed.

### 3.   Deadline for Responding to Claim Objections.

Within twenty-one (21) days after service of an objection, written responses to the objection must be filed with the Bankruptcy Court by the Holder of the Claim to which objections are made, which response shall be made and served upon the Debtor and its attorneys. Failure to file a written response within the twenty-one (21) day time period shall constitute a waiver and release of the subject Claim, and shall result in the Bankruptcy Court entering an order sustaining the objection or disallowing the claim as the court deems appropriate.

### 4.   Estimation of Claims.

The Debtor may request the Bankruptcy Court to estimate any contingent, disputed and/or unliquidated Claim for purposes of allowance and voting under section 502(c) of the Bankruptcy Code.

### 5.   Payment of Disputed Claims.

The Debtor shall make Distributions to the Holder of a Disputed Claim that becomes an Allowed Claim by Final Order, to which such Holder is then

35

entitled to be paid under the Plan. No Distribution shall be made with respect to all or any portion of any Disputed Claim pending the entire resolution thereof, including resolution of counterclaims, offsets and/or claims asserted against any Claimant.

E.   Voting on the Plan.

1.   Classes Entitled to Vote on the Plan.

Each Holder of an Allowed Claim in a Class of Claims against the Debtor which may be impaired and is to receive a Distribution under the Plan shall be entitled to vote separately to accept or reject the Plan. Each Holder of a Claim in a Class of Claims which is Unimpaired under the Plan shall be deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

2.   Cramdown.

The Debtor believes that there are impaired classes of Claims. In the event that it is determined that there are impaired class or classes of Claims that do not accept the Plan, the Debtor as proponent of the Plan reserves the right to (a) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code and/or (b) modify the Plan to provide treatment sufficient to assure that the Plan does

36

not discriminate unfairly, and is fair and equitable, with respect to the class or classes not accepting the Plan, and, in particular, the treatment necessary to meet the requirements of sections 1129(a) and (b) of the Bankruptcy Code with respect to the rejecting classes and any other classes affected by such modifications. The Plan may be the subject of cramdown under Section 1129(b).

## ARTICLE VIII

## EFFECT OF CONFIRMATION OF PLAN AND CONDITIONS PRECEDENT

A**.**  Effect of Confirmation of Plan.

1.  Discharge of Debtor.

Because the Plan is a liquidating Plan and the Debtor, a corporation, will not engage in business after consummation of the Plan, the Debtor will not be entitled to a discharge pursuant to Section 1141(d)(3).

2.  Exculpations**.**

The agents and professionals of the Debtor shall have no liability to any Holder of a Claim or Equity Interest or other Person for any act, event or omission in connection with, relating to, or arising out of, the Bankruptcy Case, the negotiation of the Plan, the Consummation of the Plan, the

administration of the Plan or the property to be distributed under the Plan, except for any liability based on willful misconduct or gross negligence. In all such instances, the above-referenced parties shall be and have been entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities in connection with the Bankruptcy Case and under the Plan. Such exculpation shall not extend to any post-petition act of any party other than in connection with that party's official capacity in the Bankruptcy Case.

    4.    <u>Injunction.</u>

Upon the Effective Date, the Debtor's obligations shall be as set forth in the confirmed Plan and all entities who have held, hold or may hold Claims against the Debtor are permanently enjoined, on or after the Effective Date from continuing in any manner any action or other proceeding of any kind with respect to such claim that was pending prior to the commencement of this Chapter 11 proceeding.

    5.    <u>Releases</u>.

Upon the completion of payments required under the Plan and in consideration of the distributions to be made hereunder, each Holder (as well as any agents on behalf of each Holder) of a Claim shall be deemed to have

38

forever waived, released, and discharged the Debtor, and attorneys for the Debtor to the fullest extent permitted by Section 1141 of the Bankruptcy Code, of and from any and all Claims, rights and liabilities that arose prior to the Effective Date.

As of the Effective Date, the Debtor's agents, accountants, financial consultants and attorneys, including Professionals (acting in such capacity), shall neither have nor incur liability to any Entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, Disclosure Statement, earlier versions of same or any contract, instrument, release or other agreement or documents created or entered into, or any other action taken or omitted to be taken in connection with this Plan or this Chapter 11 Case; provided, however, that the foregoing provisions of this Section shall have no effect on the liability of any Entity that would otherwise result from any such action or omission to the extent that such action or omission is determined in a Final Order to have constituted willful misconduct.

The injunction, release, and exculpation provisions contained in the Plan are fair and equitable, are given for valuable consideration, and are in

the best interests of the Debtor and its Chapter 11 Estate, and such provision

shall be effective and binding upon all Entities**.**

### 6.   Term of Injunction or Stays**.**

Unless otherwise provided herein or otherwise ordered by the court,

all injunctions or stays set forth in Sections 105 or 362 of the Bankruptcy

Code (11 U.S.C. §§105 and 362) shall remain in full force and effect until

the Effective Date rather than the Confirmation Date. Nothing in this

Section, however, shall be construed as a limitation of the permanent

discharge and injunction provisions provided for in this Plan.

### 7.   Conditions Precedent to Confirmation and Effective Date.

### A.   Effective Date.

The Effective Date shall occur and will commence upon the date that

all conditions to the effectiveness of the Plan have been satisfied or waived,

and which shall be evidenced by the Debtor's counsel filing a Notice of

Effective Date with the Bankruptcy Court. The occurrence of the Effective

Date and the Substantial Consummation of the Plan are subject to

satisfaction of the following conditions precedent:

### 1.   Confirmation Order**.**

The Confirmation Order shall have become a Final Order and be in

40

full force and effect.

2.      Execution of Documents; Other Actions.

All other actions and documents necessary to implement the Plan shall have been executed and no conditions to the respective effectiveness thereof shall exist.

3.      Payment of all Allowed Administrative Claims and Allowed Professional Fee Claims.

All Allowed Administrative Claims and Allowed Professional Fee Claims shall be paid by the Debtor to the extent provided herein.

4.      Waiver.

In its sole discretion, the Debtor may waive any condition precedent, in its favor, to confirmation and to the occurrence of the Effective Date.

5.      Retention of Jurisdiction.

As more specifically provided in the Plan, after the Confirmation Date the Bankruptcy Court (to the maximum extent permitted by the Bankruptcy Code or other applicable law) will retain jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and the Plan.

6.      Defects, Omissions, Amendment and Modification of the Plan; Severability.

41

A.     Defects, Omissions, Amendments and Modifications**.** The
Debtor may, with the approval of the Bankruptcy Court and without notice
to holders of Claims, insofar as it does not materially and adversely affect
holders of Claims, correct any defect, omission, or inconsistency in the Plan
in such a manner and to such extent necessary or desirable to expedite the
execution of the Plan. The Debtor may propose amendments or alterations
to the Plan before or after confirmation as provided in section 1127 of the
Bankruptcy Code if, in the opinion of the Bankruptcy Court, the
modification does not materially and adversely affect the interests of holders
of Claims, so long as the Plan, as modified, complies with sections 1122
and 1123 of the Bankruptcy Code and the Debtor have complied with section
1125 of the Bankruptcy Code. The Debtor may propose amendments or
alterations to the Plan before or after the Confirmation Date but prior to
substantial consummation, in a manner that, in the opinion of the
Bankruptcy Court, does not materially and adversely affect holders of
Claims, so long as the Plan, as modified, complies with sections 1122 and
1123 of the Bankruptcy Code, the Debtor has complied with section 1125 of
the Bankruptcy Code, and after notice and hearing, the Bankruptcy Court
confirms such Plan, as modified, under section 1129 of the Bankruptcy Code.

B. <u>Severability.</u> In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

C. <u>Revocation or Withdrawal of the Plan.</u>

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Plan is revoked or withdrawn prior to the Confirmation Date of the Plan, the Plan shall be deemed null and void at the Debtor's option and in the exercise of the Debtor's discretion. In such event, (a) the Debtor and all holders of Claims and Equity Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Hearing, and (b) all of the Debtor's respective obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained herein or in the Disclosure Statement shall be deemed an admission or statement against interest or to constitute a waiver or release of

any claims by or against the Debtor or any other Entity or to prejudice in any manner the rights of the Debtor or any other Entity in any further proceedings involving the Debtor or Entity.

## ARTICLE IX

## FINANCIAL INFORMATION, PROJECTIONS, FEASIBILITY AND RISK

The Debtor has analyzed its ability to meet its obligations under the Plan, and believes that it will be able to make all payments required under the Plan.

1. <u>Description and Value of Assets at Commencement of this Case.</u>

As required by Bankruptcy Code, Debtor filed Schedules and Statements of Financial Affairs on January 5, 2018 upon the commencement of this case. Schedules A and B of said Schedules are intended to provide information to creditors and other parties in interest about the assets of Debtor when the petition was filed. Attached as "Exhibit A" is a copy of Official Form 106 Sum which summarizes the Debtor's assets and liabilities on the date of filing.

44

## ARTICLE X

## ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

If the Plan is not confirmed and consummated, the Debtor' alternatives include: (a.) liquidation of the Debtor under Chapter 7 of the Bankruptcy Code, and (b.) the preparation and presentation of an alternative plan or plans of reorganization or (c.) dismissal of the bankruptcy case. The Debtor reserves the right to pursue any of these courses of action should the Plan not be confirmed.

## LIQUIDATION ANALYSIS

The Debtor is proposing a liquidation Plan. Specifically, the Debtor is proposing the distribution of the proceeds from the sale of the Debtor's assets to creditors in the order of priority set forth in section 507(a) of the Bankrutpcy Code. Debtor believes that the distribution of the funds pursuant to this Chapter 11 Plan will result in a greater distribution to creditors than if the case were to be converted to chapter 7. If the case were to be converted, the Court would appoint a chapter 7 Trustee who would receive a percentage of the funds distributed as a commission. Based on the amount of funds to be distributed, totaling in excess of $469,000.00, the commission to a chapter 7

Trustee would greatly exceed the administrative costs incurred in administering the Chapter 11 Plan.

## ARTICLE XI

## CERTAIN UNITED STATES FEDERAL INCOME TAX

## CONSEQUENCES OF THE PLAN

Pursuant to section 1146(c) of the Bankruptcy Code, any transfers from the Debtor to any person or Entity pursuant to the Plan shall not be subject to any documents recording tax, stamp tax, conveyance tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local government officials  or agents to forego the collection of any such tax or governmental assessment and to accept for filing any recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. [1]

The following discussion is a general summary of certain federal income tax aspects of the Plan and should not be relied upon for purposes of

---

[1] See In re Webster Classic Auctions, Inc. 318 B.R.216 (Bkrtcy.M.D.Fla.2004)

determining the specific tax consequences of the Plan with respect to a particular holder of a Claim.  This discussion is based upon existing provisions of the Internal Revenue Code of 1986, as amended (the "Tax Code"). Existing and proposed regulations thereunder, and current pertinent administrative rulings and court decisions.  No assurance can be given that legislative or administrative changes or court decisions may not be forthcoming which would require significant modification of the statements expressed in this section.

Certain tax aspects of the Plan are uncertain due to the lack of applicable regulations and other tax precedent.  THE DEBTOR IS NOT REQUESTING A RULING FROM THE INTERNAL REVENUE SERVICE ("IRS") WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN, AND THE DEBTOR HAS OBTAINED NO OPINION OF COUNSEL WITH RESPECT THERETO. ACCORDINGLY, NO REPRESENTATIONS OR ASSURANCES ARE BEING MADE WITH RESPECT TO THE FEDERAL INCOME TAX CONSEQUENCES AS DESCRIBED HEREIN.  THE TAX CONSIDERATIONS APPLICABLE TO CERTAIN HOLDERS (SUCH AS PENSION OR PROFIT-SHARING TRUSTS OR FOREIGN INVESTORS) MAY BE DIFFERENT THA THE

GENERAL DISCUSSION CONTAINED HEREIN.  THERE MAY ALSO BE STATE, LOCAL, OR FOREIGN TAX CONSIDERATIONS APPLICABLE TO EACH HOLDER OF A CLAIM, WHICH ARE NOT ADDRESSED HEREIN.  EACH HOLDER OF A CLAIM AFFACTED BY THE PLAN SHOULD CONSULT HIS OR HER OWN TAX ADVISOR REGARDING THE SPECIFIC TAX CONSEQUENCES OF THE PLAN WITH RESPECT TO THAT HOLDER'S CLAIM OR INTEREST.

## ARTICLE XII

## CONCLUSION AND RECOMMENDATION

The Debtor believe that confirmation and implementation of the Plan is preferable to any of the alternatives described above because it will provide the greatest recoveries to holders of claims.  In addition, other alternatives would involve significant delay, uncertainty and substantial additional administrative costs.  The Debtor urges holders of impaired claims to vote in favor of the plan.

Gulf Medical Services, Inc.

/s/ Ken Steber
By its President

/s/ J. Steven Ford
J. Steven Ford

48