UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IN RE

GULF MEDICAL SERVICES, INC.,          CASE NO. 18-30012-JCO
                                      CHAPTER 11
        Debtor.

---

## CHAPTER 11 PLAN OF DEBTOR (LIQUIDATING PLAN)

---

Gulf Medical Services, Inc. ("Gulf Medical"), hereby submits to its
creditors its Chapter 11 Plan (the "Plan") pursuant to Chapter 11 of Title 11,
United States Code (hereafter referred to as the "Bankruptcy Code" or the
"Code").

### BACKGROUND OF CASE AND
### SUMMARY OF PLAN

Gulf Medical Services, Inc. was incorporated on June 12, 1987. The
corporation was formed for the purpose for providing medical equipment to its
customers as prescribed by the customers' physicians. Over time, the Debtor
expanded to four locations along the northern gulf coast of Florida with its
principal business location at 3103 North 12th Avenue, Pensacola, Florida.
The Debtor also operated locations in Fort Walton Beach, Tallahassee and
Panama City Beach. After expanding its business, the Debtor began

- 1 -

generating multi-million-dollar sales each year. In 2015, the Debtor's gross revenues were in excess of $12,000,000.00. However, beginning in 2016, Medicare and Medicaid reduced payments on some of the equipment provided by the Debtor resulting in a decrease in total revenues in excess of $2,000,000.00. Additionally, the Debtor lost one of its contracts resulting in additional loss of revenues of approximately $1,200,000.00. Gross revenues in 2016 were approximately $10,000,000.00. Gross revenues in 2017 were slightly under $8,000,000.00. The drastic reduction in income resulted in the Debtor being unable to make payments on its debts. The chapter 11 case was filed to allow the Debtor to restructure its debts adjusted for its then current cash flow through a chapter 11 plan which would be funded through the continued operations of the Debtor.

Because much of the Debtor's debts were personally guaranteed by its principals, Kenneth Steber and Stephen Jernigan, the downturn in income also resulted in Mr. Steber and Mr. Jernigan filing separate chapter 11 cases. On December 18, 2018, the Court entered its Order Administratively consolidating the three Chapter 11 Cases (Doc. 137). Subsequent to the administrative consolidation, the Debtor began

- 2 -

preparation of a proposed joint chapter 11 plan of reorganization which would provide for payment of the debt of Gulf Medical, and the guaranteed debt owed by Steber and Jernigan, through the continued operation of the business.

Unfortunately, the Debtor's revenues continued to decline and the Debtor began defaulting on post-petition obligations. By early 2019, the Debtor determined that the best course of action for the benefit of the Debtor, its estate and its creditors would be a sale of the Debtor's assets. On April 3, 2019 the Debtor entered into a contract with AeroCare Holdings, Inc. for a sale of substantially all of the Debtor's assets. An Order Granting Debtor's Motion to Sell Property Free and Clear of Liens to AeroCare Holdings, Inc. was entered on May 24, 2019 (Doc. 173). The Order was subsequently amended on August 6, 2019 to reflect that the contract had been assigned to Medical Logic Ft. Walton, Inc., a wholly owned subsidiary of AeroCare Holdings, Inc. The Amended Order also excluded from the sale the real property and improvements located at 320 Racetrack Road, Fort Walton Beach, Florida and reduced the sale price to $1,925,000.00, to reflect the exclusion of the real estate.

The sale of the Debtor's assets closed on August 22, 2019, at which time the sale proceeds of $1,925,000.00 were paid to the Debtor and deposited into Debtor's attorney's trust account. At closing, the sum of $77,511.25 was paid to Regions Bank for the release of the liens on the vehicles which were part of the sales transaction.

On October 17, 2019, the Court entered its Order Approving Distributions to Secured Creditors (Doc. 231). On that same date, the Court entered its Order Approving Compromise with Regions Bank (Doc. 230) which authorized the transfer of the 320 Racetrack Road property to Regions Bank in exchange for a credit towards the debt owed to Regions in the amount of $275,000.00. On November 13, 2019, the Court entered its Order Approving Compromise with Philips Medical Capital (Doc. 250), which settled the amount of the secured claim owed to Philips Capital with an agreed upon amount of $150,000.00.

In addition to payment of the above-referenced claims, the Debtor paid attorney fees and costs owed to the Debtor's attorney which were approved pursuant to the Order Approving First Interim Application for Compensation (Doc. 155) and the Order Approving Second Interim Application for Compensation (Doc. 340).

On December 18, 2020, the Court granted the Debtor's Motion for Authority to Make Partial Distributions to Holders of Administrative Claims (Doc. 341) which authorized the Debtor to make partial payment equal to 60% of the allowed amount of each administrative claim previously approved by the Court. Before making the partial distributions, the Debtor calculated the maximum amount which could potentially be owed to the Internal Revenue Service resulting from the sale of the Debtor's assets in August 2019 and withheld that sum. Subsequently, the Debtor's accountant has determined that the tax liability for tax year 2019 will be zero based on various losses the Debtor is able to use to offset the potential gain from the sale.

Accordingly, the Debtor has now filed this Disclosure Statement and a proposed Plan of Reorganization which proposes to distribute the remaining funds on hand. After the payment of the debts and claims referenced above, and after the payment of U.S. Trustee quarterly fees, the Debtor currently has on hand the sum of $469,813.21.

## ARTICLE I

## DEFINITIONS

Except as otherwise indicated, the terms used in this Plan have the definitions set forth in the Bankruptcy Code and applicable Federal Rules of

Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for the Northern District of Florida. In addition, the following terms shall have the following meanings:

1.1   Allowed claim shall mean a claim (a) with respect to which a proof of claim has been filed with the Court within the applicable period of limitation fixed by the Federal Rules of Bankruptcy Procedure, Rule 3003, or (b) scheduled in the schedules prepared and filed by the Debtor with the Court and not listed as disputed, contingent or unliquidated as to amount, or (c) as set forth in the Debtor's Plan or Disclosure Statement, as filed or as subsequently amended, in either case, as to which no objection has been then determined by an order of the Court which is no longer subject to appeal. An allowed claim shall not include unmatured or post-petition interest unless otherwise stated in the Plan.

1.2   Allowed secured claim shall mean an allowed claim secured by a lien or other security interest in property of the Debtor to the extent of the value of the property as set forth in the Debtor's Disclosure Statement or, if a valuation is requested by the secured creditor, as determined pursuant to Section 506(a) of the Code.

1.3     <u>Allowed Administrative Claim</u> shall mean a claim arising under section 503 of the Bankruptcy Code which has been approved by the Court following an Application for Allowance of Administrative Claim filed by the claimant or which the Debtor agrees constitutes a valid expense or claim incurred by claimant in connection with the Chapter 11 case for the benefit of the estate.

1.4     <u>Confirmation date</u> shall mean the date upon which the Order of Confirmation is entered by the Court.

1.5     <u>Court</u> shall mean the United States Bankruptcy Court for the Northern District of Florida in which the Debtor's Chapter 11 case is pending or any Court having competent jurisdiction to hear appeals from the Bankruptcy Court.

1.6     <u>Debtor</u> shall mean Gulf Medical Services, Inc., the Debtor-in-Possession and the proponent of this Plan of Reorganization.

1.7     <u>Effective Date</u> shall mean the date following the confirmation date after which no appeal of the Order of Confirmation can be taken and the date upon which all conditions precedent to the effectiveness of the Plan have occurred or been waived and upon which Counsel for the Debtor files a Notice of Effective Date with the Bankruptcy Court.

1.8     Order of Confirmation shall mean the Order entered by the Court confirming the Plan under the provisions of Chapter 11 of the Code.

1.9     Plan shall mean this Chapter 11 Plan of Reorganization as amended, modified or altered in accordance with the Code.

1.10    Proceeds shall mean the funds held in trust by the Debtor's attorneys which represent the proceeds from the sale of substantially all of the Debtor's assets to Medical Logic Ft. Walton, Inc.

## ARTICLE II

## CLASSIFICATION AND TREATMENT OF CLAIMS

The claims of creditors and interests are classified and shall be treated as follows:

2.1 (A)     Allowed Administrative Expense Claims: Class 1

1.     Allowed Administrative Expense Claims Against the Debtor.

The Debtor filed its Voluntary Petition commencing this case on January 5, 2018. Subsequent to the commencement of the case, the Debtor continued to operate its business. In connection with the operation of its business, the Debtor continued to incur operating expenses including the purchase of goods, services, and the employment of key employees. Although the Debtor continued to pay its post-petition debts, not all debts which were

incurred were paid in full. As a result, there are post-petition administrative expenses which were not yet paid at the time the business closed its doors.

On September 9, 2019, the Court entered its Order Setting Bar Date for the filing of Administrative Claims (Doc. 206). Pursuant to the Order, any party holding an unpaid administrative claim for goods or services rendered during the period of time January 5, 2018, to August 21, 2019 (the date the Debtor's business closed), was given 60 days to file a Motion for Allowance of Administrative Claim (to October 8, 2019). Once the motions for allowance of administrative claims were filed, orders were entered allowing administrative claims as set forth in the attached Exhibit "A". On December 18, 2020, the Court entered its Order Granting Motion of Debtor for Authority to Make Partial Payments to Holders of Allowed Administrative Claims (Doc. 341) which authorized payment to Allowed Administrative Claim holders in the amount of 60% of the allowed claim. Upon entry of the Order, the Debtor made the distributions to Allowed Administrative Claim holders. Upon the Effective Date, the Debtor will pay the balances owed to Allowed Administrative Claim holders as set forth in the attached Exhibit "A". In the event there are insufficient funds available to pay all claims in full, claims will be paid on a pro rata basis from the available funds.

2.     <u>Bar Date for Filing Applications for Allowance and Payment of
Other Administrative Expense Claims</u>.    Applications for allowance and
payment of Administrative Claims (except for Professional Fee Claims) that
arose after the bar date of October 8, 2019 must be filed no later than fifteen
(15) days before the Confirmation Hearing. The Court shall not consider any
applications for the allowance of an Administrative Expense Claim incurred
prior to Confirmation that are filed after such fifteen (15) day period, and any
such Administrative Expense Claim shall be discharged and forever barred.
All Administrative Expense Claims that become Allowed Administrative
Expense Claims after the Confirmation Hearing will be treated like other
Allowed Administrative Expense Claims and will be paid on the later of the
Effective Date, within thirty (30) days after becoming an Allowed
Administrative Expense Claim, or pursuant to an agreement between the
Debtor and the Claimant. Any such Claim that is allowed, but determined not
be an Administrative Expense Claim, will be treated as a General Unsecured
Claim under Class 10r.

2.1(B)      <u>Professional Fee Claims</u>.

1.      <u>Allowed Professional Fee Claims Against the Debtor</u>. Holders
of Allowed Professional Fee Claims shall receive from the Proceeds, on

account of such Allowed Professional Fee Claim, cash in the amount of such Allowed Professional Fee Claim on or before Effective Date, or upon entry of an Order approving the fee.

2.    Bar Date for Filing Application for Allowance and Payment of Fee Claims Against the Debtor. Holders of pre-confirmation Professional Fee Claims shall file any final applications for allowance and payment of Professional Fee Claims within sixty (60) days after the Confirmation Date. The Bankruptcy Court shall not consider any applications for the allowance of a pre-confirmation Professional Fee Claim filed after such date, and any such Professional Fee Claim shall be discharged and forever barred. All Professional Fee Claims that become Allowed Professional Fee Claims after the Confirmation date will be treated like other Allowed Professional Fee Claims and will be paid no later than the Effective Date or within Thirty (30) days after becoming an Allowed Professional Fee Claim unless otherwise ordered by the Bankruptcy Court.

2.1(C)    Priority Claims and Priority Tax Claims.

1.    Allowed Priority Claims Against the Debtor. Subject to the bar date provisions of Paragraph (2) of this Section, the holders of Allowed Priority Claims (other than priority tax claims as set forth below) against the

Debtor shall receive from the Debtor on account of such Allowed Priority Claims, cash in the amount of such Allowed Priority Claim on the later of the Effective Date or within thirty (30) days after becoming an Allowed Priority Claim, after payment of Allowed Administrative Expense Claims as set forth in paragraph 2.1 (A) and (B) above.

2. <u>Bar Date for filing Priority Claims</u>. Applications for allowance and payment of Priority Claims incurred on or before the Petition date must have been filed by the Bar Date. The Bankruptcy Court shall not consider any applications for the allowance of any Priority Claim filed after such date, and any such Priority Claim shall be discharged and forever barred. All Priority Claims that become Priority Claims after the Confirmation Date will be treated like other Priority Claims and will be paid on the later of the Effective Date or within thirty (30) days after becoming a Priority Claim. Any such Claim that is allowed, but determined not to be a Priority Claim, will be treated as a General Unsecured Claim under Class.

3. <u>Allowed Priority Tax Claims Against the Debtor</u>. Subject to the bar date provisions of Paragraph (4) of this Section, the Holder of an Allowed Priority Tax Claim against the Debtor shall receive from the Debtor on

account of such Allowed Priority Tax Claim, an amount equal to their Allowed Claim on the Effective Date.

4. <u>Bar Date for Filing Priority Tax Claims</u>. Applications for allowance and payment of Priority Tax Claims incurred on or before the Petition Date must have been filed by the Bar Date. The Bankruptcy Court shall not consider any applications for the allowance of any Priority Tax Claim filed after such date, and any such Priority Tax Claim shall be discharged and forever barred. All Priority Tax Claims that become Priority Tax Claims after the Confirmation Date shall be treated like other Priority Tax Claims and will be paid on the Effective Date or within thirty (30) days after becoming an Allowed Priority Tax Claim. Any such Claim that is allowed, but determined not to be a Priority Tax Claim, will be treated as a General Unsecured Claim under Class.

2.1(D) <u>U.S. Trustee's Fees</u>

The Debtor shall timely pay post-Confirmation quarterly fees assessed pursuant to 28 U.S.C. Section 1930(a)(6) until such time as the Bankruptcy Court enters an order administratively closing the case or a final decree is entered. Any such fees outstanding and due as of the Effective Date shall be paid on the Effective Date.

2.2   Unsecured Priority Claim of the Internal Revenue Service (Gulf Medical): Class 2

The Internal Revenue Service filed an unsecured priority claim for income taxes owed by Gulf Medical in the amount of $98,981.31 (claim 17-5). This claim will be paid 100% of the present value of the allowed claim plus statutory interest upon the Effective Date to the extent that funds are available after payment of claims in paragraphs 2.1 (A), (B), (C) and (D). If there are not sufficient funds to pay the claim in full, the claim will be paid on a pro rata basis with all allowed priority claims in Classes 2.2 through 2.5.

2.3   Priority Claim of the Florida Department of Revenue (Gulf Medical): Class 3

The Florida Department of Revenue filed an unsecured priority claim (claim 5) in the amount of $5,919.05 for corporate income taxes owed by Gulf Medical. This claim will be paid 100% of the present value of the allowed claim plus statutory interest upon the Effective Date to the extent that funds are available after payment of claims in paragraphs 2.1 (A), (B), (C) and (D). If there are not sufficient funds to pay the claim in full, the claim will be paid on a pro rata basis with all allowed priority claims in Classes 2.2 through 2.5.

2.4   Unsecured Priority Claim of the Florida Department of Revenue (Gulf Medical): Class 4

The Florida Department of Revenue filed an unsecured priority claim for unpaid sales tax owed by Gulf Medical in the amount of $20,481.46 (claim 20). This claim will be paid 100% of the present value of the claim plus statutory interest upon the Effective Date to the extent that funds are available after payment of claims in paragraphs 2.1 (A), (B), (C) and (D). If there are not sufficient funds to pay the claim in full, the claim will be paid on a pro rata basis with all allowed priority claims in Classes 2.2 through 2.5.

2.5   Unsecured Priority Claim of Linde Gas North America, LLC (Gulf Medical): Class 5

Linde Gas North America, LLC filed a claim in the amount of $2,027.60 as a priority claim owed by Gulf Medical pursuant to section 503(b)(9) of the Bankruptcy Code for goods received by Gulf Medical within 20 days prior to the bankruptcy petition being filed. This claim will be paid 100% of the present value of the claim upon the Effective Date to the extent that funds are available after payment of claims in paragraphs 2.1 (A), (B), (C) and (D). If there are not sufficient funds to pay the claim in full, the claim

will be paid on a pro rata basis with all allowed priority claims in Classes 2.2 through 2.5.

2.6    Claims of Cardinal Health 110, LLC (Gulf Medical): Class 6

Cardinal Health 110, LLC, filed proof of claim number 39 asserting a secured claim in the amount of $88,870.99. The loan documents attached to the proof of claim assert a blanket lien on the assets of Gulf Medical. However, because there is no equity in the assets to extend to this creditor's claim, the claim shall be treated as a general unsecured claim in class number 10.

2.7    Executory Contract Claim of CIT Bank, NA (Gulf Medical): Class 7

CIT Bank, NA, filed proof of claim number 6 based on an executory contract for the lease of a copier in the amount of $2,180.79. The copier will be surrendered. The claim will be treated as a general unsecured claim.

2.8    Executory Contract Claim of CIT Bank, NA (Gulf Medical): Class 8

CIT Bank, NA, filed proof of claim number 7 based on an executory contract for the lease of a copier in the amount of $1,510.87. The copier will be surrendered. The claim will be treated as a general unsecured claim.

2.9    Wells Fargo Vendor Financial Services, LLC: Class 9

Wells Fargo Vendor Financial Services, LLC, filed a proof of claim number 40 based on an executory contract for the lease of a printer/scanner in the amount of $18,051.51. The printer/scanner will be surrendered. The claim will be treated as a general unsecured claim.

2.10   General Unsecured nonpriority Claims: Class 10

Allowed general unsecured nonpriority claims will be paid the balance of all funds remaining on a pro rata basis after payment of priority and administrative claims set forth in Article II, above, to the extent that funds are available.

## ARTICLE III

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

3.1    Executory Contracts and Leases will be treated as provided for in Paragraphs 2.7, 2.8 and 2.9.

## ARTICLE IV

## MEANS AND IMPLEMENTATION OF THE PLAN

4.1    Means and Implementation.

On August 21, 2019, the Debtor ceased operating as on an ongoing business. On that date, pursuant to Court Order the Debtor sold substantially all of its assets and received, in exchange, the sum of $1,925,000.00. After the

payment of allowed secured claims, as approved by the Court and a partial payment to Allow Administrative Claims and U.S. Trustee fees and attorney fees approved by the Court, the Debtor is currently holding the sum of $469,813.21 which will be distributed to creditors pursuant to a confirmed Plan. This amount is subject to change as a result of the payment of U.S. Trustee quarterly fees and any other payments approved by the Courts prior to confirmation of the Plan.

## 4.2   Objections to Claims

The Debtor may object to any claim filed with the Bankruptcy Court and may object to and contest the allowance of any such claims. Within 21 days after service of the objection, written responses must be filed with the Bankruptcy Court by the holder of the claim. Failure to file a written response shall constitute a waiver and release of the claim.

## 4.3   Disputed Claims

No distribution shall be made on any disputed claim until such time as the claim is resolved by agreement of the parties or by an order of the Bankruptcy Court.

## ARTICLE V

## ACCEPTANCE OR REJECTION OF THE PLAN

5.1    Classes Entitled to Vote

Each holder of an Allowed Claim in a Class of Claims against the Debtor which may be impaired and is to receive a distribution under the Plan shall be entitled to vote separately to accept or reject the Plan. Each holder of a claim in a Class of Claims which is unimpaired under the Plan shall be deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.

5.2    Cramdown

Under the Plan there are impaired classes of claims. In the event that it is determined that there are impaired class or classes of claims that do not accept the Plan, the Debtor as proponent of the Plan reserves the right to (a) request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code and/or (b) modify the Plan to provide treatment sufficient to assure that the Plan does not discriminate unfairly, and is fair and equitable, with respect to the class or classes not accepting the Plan, and, in particular, the treatment necessary to meet the requirements of Sections 1129(a) and (b) of the Bankruptcy Code with respect to the rejecting classes and any other classes affected by such modifications. The Plan may be the subject of cramdown under Section 1129(b).

ARTICLE VI

EFFECT OF CONFIRMATION OF PLAN

6.1   Effect of Confirmation

A.   <u>Discharge of Debtor.</u>   The Debtor is entitled to a discharge pursuant to the provision of 1141(d)(1).

B.   <u>Exculpations.</u>   The professionals retained by the Debtor shall have no liability to any holder of a claim or other person for any act, event or omission in connection with, relating to, or arising out of, the Bankruptcy Case, the negotiation of the Plan, the Consummation of the Plan, the administration of the Plan, or the property to be distributed under the Plan, except for any liability based on willful misconduct or gross negligence. In all such instances, the above referenced parties shall be and have been entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities in connection with the Bankruptcy Case and under the Plan. Such exculpation shall not extend to any post-petition act of any party other than in connection with that party's official capacity in the Bankruptcy Case.

C.   <u>Injunction.</u>   Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the Bankruptcy Court, all entities who have held, hold or may hold Claims against, or interests in, the

- 20 -

Debtor, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor, (c) creating, perfecting or enforcing any encumbrance of any kind against the Debtor or against Debtor's Assets or the Property, and (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or against the Property or interests in property of the Debtor on account of any such Claim or Interest.

D.    Releases.    Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise expressly provided herein, each Holder (as well as any agents on behalf of each holder) of a Claim shall be deemed to have forever waived, released, and discharged the Debtor and attorneys for the Debtor, including J. Steven Ford and Wilson, Harrell, Farrington, Ford, Wilson, Spain & Parsons, P.A.., to the fullest extent permitted by Section 1141 of the Bankruptcy Code, of and from any and all Claims, rights and liabilities that arose after the commencement of this Case and prior to the Effective Date.

As of the Effective Date, the Debtor, and its respective agents, accountants, financial consultants and attorneys, including Professionals (acting in such capacity), shall neither have nor incur liability to any Entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, **Confirmation** or consummation of the Plan, or Disclosure Statement, or earlier versions of same or any contract, instrument, release or other agreement or documents created or entered into, or any other action taken or omitted to be taken in connection with this Plan or this Chapter 11 Case; provided, however, that the foregoing provisions of this Section shall have **no** effect on the liability of any Entity that would otherwise result from any such action or omission to the extent that such action or omission is determined in a Final Order to have constituted willful misconduct.

The injunction, release, and exculpation provisions contained in the Plan are fair and equitable, are given for valuable consideration, and are in the best interests of the Debtor and its Chapter 11 Estate, and such provision shall be effective and binding upon **all Entities.**

6.2    Term of Injunction or Stays.

Unless otherwise provided herein or otherwise ordered by the court, all injunctions or stays set forth in Sections 105 or 362 of the Bankruptcy Code (11 U.S.C. §§105 and 362) shall remain in full force and effect until the Effective Date rather than the Confirmation Date. Nothing in this Section, however, shall be construed as a limitation of the permanent discharge and injunction provisions provided for in this Plan.

## ARTICLE VII

## CONDITIONS PRECEDENT TO EFFECTIVE DATE

The Effective Date shall occur and will commence upon the date that all conditions to the effectiveness of the Plan have been satisfied or waived, and which shall be evidenced by the Debtor's counsel filing a Notice of Effective Date with the Bankruptcy Court. The occurrence of the Effective Date and the Substantial Consummation of the Plan are subject to satisfaction of the following conditions precedent:

7.1   Confirmation Order.

The Confirmation Order shall have become a Final Order and be in full force and effect.

7.2   Execution of Documents; Other Actions.

All other actions and documents necessary to implement the Plan shall have been executed and no conditions to the respective effectiveness thereof shall exist.

7.3   Payment of all Allowed Administrative Claims and Allowed Professional Fee Claims.

All Allowed Administrative Claims and Allowed Professional Fee Claims shall be paid by the Debtor to the extent provided herein.

7.4   Waiver.

In its sole discretion, the Debtor may waive any condition precedent, in its favor, to confirmation and to the occurrence of the Effective Date.

## ARTICLE XIII

## RETENTION OF JURISDICTION

8.1   To the maximum extent permitted by the Bankruptcy Code or other applicable law, the Bankruptcy Court shall have jurisdiction of all matters arising out of, and related to, the Bankruptcy Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following nonexclusive purposes:

(1)   To construe and to take any action to enforce this Plan and to

issue such orders as may be necessary for the implementation, execution and confirmation of this Plan;

(2)    To hear and determine the allowance or classification of Claims or Existing Equity Holders' Claims and to determine any objections thereto and/or the subordination thereof;

(3)    To determine rights to Distribution pursuant to this Plan;

(4)    To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(5)    To determine any .and all applications, motions, adversary proceedings, contested matters and other litigated matters that may be pending in the Bankruptcy Court on or initiated after the Effective Date;

(6)    To hear and determine any objection to Administrative Expense Claims or Claims;

(7)    To hear and determine any Causes of Action brought or continued by or against the Debtor to the maximum extent permitted under applicable law;

(8)    To enter and implement such orders as may be appropriate in the

event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(9)    To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(10)    To hear and determine matters concerning any Release and to enforce the injunctions set forth in the Plan;

(11)    To consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(12)    To hear and determine all Fee Applications as well as objections to payment of fees and expenses;

(13)    To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or any transactions contemplated by the Plan;

(14)    To hear and determine all questions and disputes regarding title to, and any action to recover any of, the Assets or property of the Debtor or its estate, wherever located;

(15)    To hear and determine matters concerning state, local, and

Federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(16)   To consider and act on the compromise and settlement of any claim against the Debtor or its estate;

(17)   To hear any other matter not inconsistent with the Bankruptcy Code; provided, that with respect to consideration issued to parties in interest under the Plan, the Bankruptcy Court shall have no further jurisdiction; and

(18)   To enter a Final Decree closing the Bankruptcy Case.

(19)   To consider and/or enforce the rights and claims of the parties under and pursuant to all documents or agreements entered into pursuant to the Plan or necessary for the effectiveness thereof under this Plan.

## ARTICLE IX

## MISCELLANEOUS

9.1   Binding Effects.

The Plan shall be binding upon and inure to the benefit of the Debtor, the holder of Claims and Equity Interests, and their respective successors and assigns.

9.2.   Successors and Assigns.

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

9.3.   Defects, Omissions, Amendment and Modification of the Plan; Severability.

(1)   Defects, Omissions, Amendments and Modifications. The Debtor may, with the approval of the Bankruptcy Court and without notice to holders of Claims, insofar as it does not materially and adversely affect holders of Claims, correct any defect, omission, or inconsistency in the Plan in such a manner and to such extent necessary or desirable to expedite the execution of the Plan. The Debtor or Reorganized Debtor may propose amendments or alterations to the Plan before or after confirmation as provided in section 1127 of the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of holders of Claims, so long as the Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code and the Debtor has complied with section 1125 of the Bankruptcy Code. The Debtor or Reorganized Debtor may propose amendments or alterations to the Plan before or after the Confirmation Date but prior to substantial

Consummation, in a manner that, in the opinion of the Bankruptcy Court, does not materially and adversely affect holders of Claims, so long as the Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code, the Debtor has complied with section 1125 of the Bankruptcy Code, and after notice and hearing, the Bankruptcy Court confirms such Plan, as modified, under section 1129 of the Bankruptcy Code.

(2)     Severability. In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

9.4. Revocation or Withdrawal of the Plan.

(1)     The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.

(2)     If the Plan is revoked or withdrawn prior to the Confirmation Date the Plan shall be deemed null and void. In such event,

all of the Debtor's and Creditor's respective obligations shall remain unchanged and nothing contained herein or in the Disclosure Statement shall be deemed an admission or statement against interest or to constitute a waiver or release of any claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

9.5. <u>Notices.</u>

Any notice required or permitted to be provided under the Plan shall be in writing and served by either (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, freight prepaid, to be addressed as follows:

> J. Steven Ford, Esq.
> Wilson, Harrell, Farrington, Ford,
> Wilson, Spain, & Parsons, P.A.
> 307 S. Palafox Street
> Pensacola, FL 32502
> (850) 438-1111 Telephone
> (850) 432-8500 Facsimile

> Counsel for the Debtor

All notices, requests, elections or demands to or upon the Debtor or the Reorganized Debtor in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, three (3) days after

the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested, and sent to the above address. All notices to Claimants, Creditors, and Equity Interest holders shall be sent to their last known address. The Debtor, and any Claimant, Creditor, or Equity Interest holder, may designate in writing any other address for purposes of this Section, which designation shall be effective upon receipt.

9.6.   No Admissions.

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by any entity with respect to any matter set forth herein.

9.7.   Payment of Statutory Fees.

For so long as the Debtor's Bankruptcy Case shall remain open and pending before the Court, all fees payable pursuant to section 1930 of Title 28 of the United States Code shall be paid by the Reorganized Debtor.

9.8   Exemption from Certain Taxes.

Pursuant to Section 1146(c) of the Bankruptcy Code, any transfers from the Debtor to any person or Entity pursuant to the Plan, any mortgage entered into by Debtor in favor to any Creditor pursuant to the terms of this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee,

intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local government officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## 9.9.  Headings.

Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

## 9.10.  Exhibits.

All exhibits and schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

## 9.11.  Filing of Additional Documents.

On or before substantial Consummation of the Plan, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to reasonably effectuate and further evidence the terms and conditions of the Plan.

Respectfully submitted,

/s/ J. Steven Ford
J. Steven Ford
Wilson, Harrell, Farrington, Ford,
Wilson, Spain, & Parsons, P.A.
Attorneys at Law
307 South Palafox Street
Pensacola, FL 32502
(850) 438-1111 Telephone
(850) 432-8500 Facsimile
jsf@whsf-law.com
melissa@whsf-law.com
Counsel for the Debtor, and

Gulf Medical Services, Inc.

/s/ Ken Steber
Ken Steber, President

## EXHIBIT "A"

### Proposed Distributions under the Plan

Class 2.1(A) – Allowed Administrative Claims

| Creditor | Allowed Claim | Partial Payment | Balance |
|---|---|---|---|
| 1. Prochant | $34,100.08 | $20,460.05 | $13,640.03 |
| 2. Sleep Solution | $30,361.20 | $18,216.72 | $12,144.48 |
| 3. Escambia Tax Collector | $1,028.23 | $616.94 | $411.29 |
| 4. C. Banakas | $5,000.00 | $3,000.00 | $2,000.00 |
| 5. K. Steber[i] | $217,858.26 | $130,714.96 | $87,143.30 |
| 6. Escambia Tax Collector[ii] (2018) | $7,611.28 | $4,566.77 | $3,044.51 |
| Escambia Tax Collector[iii] (2019) | $4,231.50 | $2,538.90 | $1,692.60 |
| 7. Santa Rosa Tax Collector (2018) | $2,545.79 | $1,527.47 | $1,018.32 |
| Santa Rosa Tax Collector (2019) | $1,251.94 | $751.16 | $500.78 |
| 8. R. Roberts[iv] | $32,266.17 | $19,360.06 | $12,906.11 |
| 9. IRS | $298,903.21 | $179,341.93 | $119,561.28 |

Total:  $254,062.70

Anticipated funds remaining after payment of Allowed Administrative Claims in Class 2.1(A): $215,750.51

U.S. Trustee Fee: $1,879.25

Class 2.1(B): Professional Fee Claims - Not yet determined

Classes 2.2 - 2.5: Priority Claims - $127,409.42[v]

Classes 2.6 – 2.9: To be treated as unsecured.

Class 2.10: General unsecured nonpriority claims – to receive balance of funds on a pro rata basis.

---

[i] This claim will be paid to the Chapter 7 Trustee for Kenneth Steber in case no: 18-30639-KKS. This claim is subject to federal withholding taxes.
[ii] Property owned by Stephen Jernigan leased to the Debtor.
[iii] Property owned by Stephen Jernigan leased to the Debtor.
[iv] This claim is subject to federal withholding taxes.
[v] Does not include interest due on the claim. Interest to be calculated as of Effective Date.